This is the 126249 American Express Travel Related Services Co. v. Hollenbach Treasure Room. All units now to the seats in the front, in the back, in the front, in the back. May it please the Court, I am Walter Sayles, with me is Tim Klein, and together we represent American Express Travel Related Services. I would like to reserve three minutes for me, for rebuttal. The issues in this case are whether Kentucky's amendment to its escheat laws, reducing from 15 years to 7 years, the period after which American Express is forced to surrender to the state its proceeds from the sale of outstanding traveler's checks, applies retroactively to those traveler's checks sold prior to the effective date of the amendment. If so, then there are a panoply of constitutional questions that this Court will have to resolve under the Due Process Clause, the Takings Clause, the Impairment of Contracts Provision, and in any event, regardless, there is a Commerce Clause question. We believe that reversal is required here because the amendment to KRS 393060 does not state that it is retroactive and should not, therefore, be given that effect. KRS 446080 states that no statute shall be construed to be retroactive unless expressly so declared. And it doesn't matter whether the statute is substantive or remedial, that KRS 446080 says the declaration of retroactivity must be expressly stated in the statute. And therefore, it is our position that as the traveler's checks sold before the effective date of the statute, the statute should not be applicable. The courts, when at all possible, try to avoid resolving constitutional issues. By construing the amendment to apply to traveler's checks purchased on or after the effective date, the court need not resolve a series of constitutional issues. I believe that this case is virtually identical, analytically, to Kia versus Glassman, where this court avoided the constitutional issues present there when Michigan amended its statute providing for notice to be given to a dealer by an automobile manufacturer if the manufacturer intends to establish a dealership from six to nine miles. It was expanded. This court, dealing with an impairment of contract issue, decided not to avoid the constitutional issue by holding that the statute there was to be given prospective effect only. We believe that that's the case also here. You would say if we decided that it's prospective only, that's as much relief as you want? Almost, Your Honor. It does take away what I consider to be the most vexing issues under the due process clause, under the impairment of contract, and our takings arguments. If you decide that it's prospective only, those three constitutional issues need not be decided. But we still have the commerce clause argument, which was not presented to the original panel of this court. It contained an amended complaint, and it would deal with the prospective application of the law, and we believe that under the commerce clause, prospectively, there's a violation. If you reach the constitutional issues, we think there are a variety of reasons why American Express's constitutional rights have been violated. The amendment literally takes American Express's money. Well, it's not really your money, you're kind of holding it in charge, correct? It's just as much our money as the bank's money, as its money. Under Kentucky law, as distinguished from New Jersey law, which I'm sure you're familiar with the American Express case in New Jersey, but in Kentucky law, banks hold title to the money they receive from their depositors, and under New Jersey law, that's not the case. In Kentucky law, under the Uniform Commercial Code, traveler's checks are treated almost identically, they are treated identically, to cashier's checks, which we all recognize are, in fact, the bank's assets. They are the bank's property. So we do have a property right here, and that property right is set by Kentucky law, and from our perspective, that property right has been taken from us directly without due process. There's a takings violation and an impairment of contract problem. Of course, the holder of the traveler's check can cash it at any time, right? Get his money. The holder of the traveler's check can cash it at any time, only if American Express is around to cash it. The record reflects that in the depository... Assuming you're not going to go bankrupt, I guess. Well... And as long as you've got a company, you have to honor it, right? That's what you say you do anyway. That's right, that's what we say we do, and for the first time in their reply brief, the state concedes that American Express is absolutely necessary to the reunification of the money paid for the traveler's check with the traveler's check purchaser because the director of the unclean property division of the treasurer's office has no way of reunifying the owner with the money. They have no basis for doing so. That's what her testimony was in deposition. The amendment here, which cuts our rights from 15 to 7 years, is a substantive one. It requires... It cuts this right to invest proceeds. The act itself purports to authorize American Express to even dishonor these traveler's checks after 7 years because it relieves us of liability, but that's not true either. It really doesn't relieve American Express of liability. But if you pay them off, the state will reimburse you, right? Yes, it sometimes takes a while to do that. We don't get any interest on that. Right, I understand. Anyway, you don't lose entirely. You lose the interest, but not the principal. Right, but when you cut the escheat period from 15 years to 7 years, and you apply it retroactively, what happens is we have to immediately redeem long-term bonds that we purchased in anticipation of the 15-year escheat period, and we take a loss on those bonds. And the record does reflect that there's not just a business that goes from a profit to a loss on a year-by-year basis, but there's an extraordinary loss in the first year that this takes effect because of the problem of having to redeem long-term bonds at less than par value. And one of the important rights that we have here is that, under the Commonwealth v. Thomas Administrator's case, the escheat law is a part of every contract under Kentucky law, and therefore it is a substantive right that American Express enjoys. Well, tell me this difference between substantive and remedial, because the other side, I know, is going to argue that it's just remedial, and they've cited several cases. Why is this not remedial? The Vinson case is the major case, Your Honor, and if you read the Vinson case and you read Landsgraf, you'll see they are virtually identical in how they define a substantive and a remedial statute. But understand also, even if it's a remedial statute, it doesn't apply retroactively unless the legislature says it does. But in the Vinson case, the Kentucky Supreme Court held that there's a strong presumption that statutes operate prospectively and that retroactive application would be approved only if it is absolutely certain the legislature intended that result. That's the reason for the notice. And this is particularly true when the legislation is substantive and new rights and new duties are created. The amendments, and I'm quoting now from Vinson, amendments which change and redefine the out-of-court rights, obligations, and duties of persons in their transactions with others are considered to be changes in substantive law and come within the rule that statutory amendments cannot be applied retroactively to events which occurred prior to the effective date of the amendment. That's right out of Commonwealth v. Vinson. This court in Sparks v. Craft recognized that same phenomenon and applied that rule of law in Sparks v. Craft. It is virtually identical to the rule which you applied in, versus Glassman, and it's virtually identical to the rule that the U.S. Supreme Court has adopted in Landsgraf. A remedial statute, on the other hand, is one that applies to court procedures and remedies which are used in handling litigation, which does not exist here. And in any event, this is not a remedial statute. Remember, there's nothing to remedy here. The real reason for the statute, as the Treasurer acknowledged in his testimony before the General Assembly, was that it was a revenue raiser, and the first panel said that that was okay. It's not to reunify travel check purchasers with their money. Only American Express can do that. The Treasurer cannot. I want to spend my last few moments, my last 30 seconds, on the Commerce Clause argument, and that is because the uniformity that the Eighth Circuit said was required when federal law was established limiting the right of identifying which states could cheat the state where the travel check was purchased, and saying it was a burden on interstate commerce to require the maintenance of identifying information like name and address of the purchaser. We have a uniquely interstate business that is being affected by this law. And I see my time has expired. If there are no further questions, I'll take leave and finish up the rebuttal. Okay. Thank you, Counsel. Good morning, Your Honor. May you please record? Good morning. Essentially the crux of American Express' oral argument is that this statute should not be applied retroactively because there was no expressed language in the legislation that enacted it. Well, the Treasurer originally said it was retroactive, right? Yes, but he... Did he change his mind? He changed his mind in the course of litigation that it is being applied retroactively in the aspect as it relates to prior purchases of travel insurance and outstanding travel insurance funds. It's going to raise a lot of revenue, that perhaps, I guess. Yes, yes, very much so. I mean, basically, this whole argument flies in the face of American National Bank v. Reeves, the 1942 case that the Kentucky High Court addressed for the first time, the newly enacted statutory presumption of abandoned property related to bank deposits. And in Reeves, the Kentucky High Court specifically addressed whether or not it would apply retroactively and upheld that it could and would apply retroactively. So as he stands up here and says that outstanding property insurance funds should be treated the same as deposits, the highest court in Kentucky has already answered that question and said laws relating to deposits can apply retroactively on the subject of statutory presumptive periods of abandonment. So it's the same statute that was in effect at that time in the Reeves case? The one that says it's not going to be retroactive unless the legislation says so? The statute that he refers to, I think it was enacted later on in 1976, if I recall correctly. So it wasn't in effect at the time of the Reeves case?  Does that make it different? No, it does not make a difference. I think even his reliance on Vinson still is not supported by Kentucky law. The fact that there's no express language doesn't in and of itself end the analysis. Under the case of Kentucky Insurance Guarantee Association v. Jeffers, which is 13 SW 3rd 606, the Kentucky Supreme Court noted that the general role of statutory construction is that a statute, even though it is not explicitly stated, has retroactive application provided the statute is remedial. And the question really comes down to what is a remedial statute? And under the Jeffers case, the court stated a remedial statute relates to remedies or modes of procedures which do not create new or take away a vested right. But they lose their rights on this money for several years, right? Well, the question is, is it a vested right? And that should be this court's focus. It is not a vested right. While American Express has the right to use the funds that are outstanding until the purchaser redeems his traveler's checks, that expectation is really discretionary on the part of the purchaser. They can buy it and start using the traveler's checks the next day, the next week, a year, two years. And so that plays a big factor, I think. In reviewing the law, I think when it comes to determining what is a vested property interest as it relates to constitutional challenges, the relevant inquiry is the certainty of one's expectations in the property. If the property interest is contingent or uncertain or speculative or discretionary, it doesn't rise to the level of a vested property interest for constitutional purposes. In this case, American Express merely has an expectation to use the money until either the purchaser redeems the traveler's checks or the state presumptive period expires. Mr. Settles says that Kentucky law says that that money is theirs. It's not the buyer of the traveler's checks, but it belongs to American Express until such time as the holder wants to cash it. Is that true? It is part of the assets of a bank, in this case American Express. And in that sense, they're not the owner of the property. They can use it to invest, but once the individual comes forward to redeem the traveler's checks, American Express must give it up, or in this case if the statutory presumption period expires, then they must relinquish it to the state. That's the only power and control that they have over the monies. Is that different from a bank deposit? No, it's exactly like a bank deposit. It's treated the exact same way. If I go to my bank to get $100 out, they have to give me $100. And if I do nothing with my bank for years and this cheat period expires, the accounts close and it's put in the unclaimed property with the state treasurer. The aspect of vested interest really goes to the all-encompassing constitutional claims that they raised. First off, for a substantive due process claim, retroactive legislation does not violate substantive due process, provided that the retroactive application of a state is supported by a legitimate legislative purpose and furthers a rational means. And the power panel in this court has already addressed that issue and have found that it satisfies that element. It's just we're not talking about a vested interest, and it is remedial in the sense that it's really changing the procedure that American Express must follow. That is, instead of surrendering the money 15 years, it's to surrender it in 7 years. This is a remedial statute. It's not a substantive statute. Well, when they decide it is substantive, where do you go from there? The other side says that, well, it's a violation of the Commerce Clause, and it's unconstitutional to do this. Well, as for the violation of the Commerce Clause, there's two different aspects of the Commerce Clause. There's the direct and indirect. And basically, the legislation itself has absolutely no direct impediment to any commerce coming into Kentucky. So you're really looking at the pipe test in this case, the indirect Commerce Clause. And for American Express to establish that, it must show that the legislation is one that is clearly excessive compared to all its benefits. The law hasn't changed except for the amount of time. It's the exact same law. As the district court noted, there is no indirect violation of the Commerce Clause, as well as the 3rd Circuit when they reviewed it. American Express' Commerce Clause argument is not that the law is creating any specific indirect impediment to commerce. It is actually their possible options that they may explore that may have a hindrance, not on the commerce, but on their business model and practice as it relates to individuals purchasing traveler's checks in Kentucky. That being said, knowing that this is not of vested interest, it kind of cuts to the heart of their remaining constitutional claims. There is not a violation of the Substitute Due Process Clause. The statute is properly being applied retroactively to purchases made prior to the enactment of the statute. As for the Takings Clause, there is not a per se taking. As for the regulatory aspect, the district court properly addressed that and noted that of the three criteria that the court must review, one, the economic impact of the regulation on American Express, two, the extent to which the regulation has interfered with distinct investment-backed expectations, and three, the character of the governmental actions, the district court noted that the only one of the three that American Express can satisfy is the first one, the economic impact on it. According to Discovery, we are talking about approximately 0.4% of the overall expenses, funds that are remaining after seven years from the purchases of traveler's checks, and between seven years and 15 years, two-thirds of that 0.4% is redeemed. So we are looking at a very minute number in the overall scheme of things. The district court rejected American Express' argument that the regulation has interfered with the distinct investment-backed expectations, and in that aspect, they rejected it on two grounds. One, following the Third Circuit's decision that traveler's checks is a regulated industry, and if you're in a regulated industry, you should expect possible amendments throughout the time, and that this should have come as no surprise to American Express. The other aspect that is interesting is the investment-backed expectation must be more than a unilateral expectation. The only one of the parties between American Express and their consumer who expects to use the money for up to 15 years is American Express. If you ask any Joe Q. public on the street, they would have no idea that their traveler's checks was being used by American Express up to 15 years or until they redeem it. Does that make any difference? I think it does because it can't be unilateral, and in this case, it is. Only American Express has that unilateral expectation that they invest these funds to achieve a profit. The third element is the character of the governmental action, and the character of this governmental action is essentially Kentucky redefining its statutory period of presumption of abandonment. What if you cut it down to one year? Would you like that to be unconstitutional? No. If you cut it to three months? New Jersey cut it to three years, and the Third Circuit said it wasn't unconstitutional, and the U.S. Supreme Court did not address that. There is no mathematical formula for determining that. It's done on a case-by-case basis. I think the important aspect here is the original statutory presumption of abandonment for traveler's checks, when it was first enacted in 1960, was seven years. So between 1960 and 1976, before it was amended to 15 years, the statutory period was seven years. All Kentucky did was revert back to the 1960 presumption period. What year was that? Did it change from 7 to 15? It changed to 1976. As for the allegation of the contract clause violation, the standard to look at is whether or not there is a substantial impairment of the contractual relationship. This argument was addressed in American National Bank v. Reeves, in which the court rejected this argument citing two U.S. Supreme Court decisions, Provident Institution for Savings v. Malone and Security Savings Bank v. California, that rejected a contract argument. Both the District Court as well as the Third Circuit, who addressed all these same claims, came to the same conclusion that the presumption of reducing the statutorily presumed abandonment period from 15 years, and in Kentucky's case, to seven years, did not affect the validity, construction, or enforcement of contracts between American Express and its consumers. With that, if there are no further questions, I would ask this panel to affirm the District Court's decision, and I'll call a summary judgment in favor of the Treasurer. Thank you. Thank you, Mr. Judy. Mr. Samuels? Thank you. Let's make something clear about this change in the sheet period from 1960 to 1976. Prior to 1976, no state ever had acceded to it proceeds from a traveler's check except the state of New York, because American Express was headquartered in New York. The Supreme Court in 1974 and federal law in 1976 gave the right of the state of purchase for the first time the right to a sheet. So the whole notion that there was some change in the sheet laws affecting traveler's checks was there was a change, but it didn't affect anybody because the only state that acceded to a traveler's check before 1976 in the federal legislation was the state of New York. I think it's interesting that they've conceded now that the money that American Express receives from its depositor, from its traveler's check purchasers, is in fact its own money, is its property. And in the Ferguson Enterprises v. Main Supply case, it says precisely that the depositor money in a bank passes title and it becomes part of the assets of the bank with an implied contract that the sum will be repaid upon demand, the relationship of creditor and debtor being created. So it's absolutely clear that this is American Express's property. They've conceded that at this point. The comment about the Kentucky Insurance Guarantee Association v. Jeffers case, to the extent that that was remedial legislation, it was so stated to be, number one. And number two, it did affect in-court procedures, and it cured a problem with a guarantee fund. On the question of the economic impact, the record reflects that on a year-by-year basis, American Express in Kentucky earns $130,000 a year with the 15-year statute. That goes away. It now becomes a loss. That may not represent a large percentage of the traveler's checks. As he said, 0.6%. But that's the difference between a $130,000-a-year profit and a loss position. That's in the record in the lower court. That's not counting the redemption of the bonds early. As to the Commerce Clause issue, understand what is happening. If the law forces a race to the bottom, if every other state follows suit, how does American Express know how to invest when there are 50 different escheat periods all subject to change at any moment in time? I see that my time is up. I ask that you reverse the district court and enter judgment in favor of American Express, unless there are any other questions. Okay. Thank you, Mr. Sayles. We appreciate arguments from both counsels today. The case will be submitted.